PEOPLE *v.* RITCHIE.

1. EMBEZZLEMENT—AGENCY—CONTRACT—SUFFICIENCY.

A receipt for money given by a stock broker showing that the money is received "for 10 Moh.," meaning 10 shares of stock in the Mohawk Mining Co., is a sufficient agreement creating an agency to come within the terms of section 11572, 3 Comp. Laws, defining embezzlement by agents.

2. SAME—STOCK BROKER'S CLERK—MONEY OF CUSTOMER—LIABILITY.

A stock broker's clerk is not liable for embezzlement, as the agent of the customer of the broker, where he receives the money of the customer in his employer's name and turns it over to his employer in the due course of business, and the employer fails to invest it as agreed.

Exceptions before judgment from Houghton; Streeter, J. Submitted June 14, 1906. (Docket No. 95.) Decided July 24, 1906.

Gilbert Ritchie was convicted of embezzlement under section 11572, 3 Comp. Laws. Reversed.

Respondent was convicted of a violation of section 11572, 3 Comp. Laws, which reads as follows:

"Whenever money, or any goods, wares or merchandise or other personal property, shall be delivered, committed or intrusted to, or put in charge of, any person or persons as agent or agents with written instructions, or upon any written agreement signed by the party so instructed as agent, or such written instructions shall be delivered, or such written agreement shall be made, at any time after delivery to such agent or agents, of any money or goods, wares, merchandise, or other personal property, which instructions or agreements shall express the appropriation, purpose or use to which such money shall be applied, or the terms, mode or manner of the application or employment of such money, or which shall express or direct the disposition or use to be made by such

agent, of any goods, wares, merchandise, or other person-
al property, so delivered or intrusted to such agent; if the
person or persons to whom any such money or goods,
wares or merchandise or other personal property shall be
so delivered, committed or intrusted, shall purposely and
intentionally apply, appropriate, dispose of, or use any
such money or goods, wares, merchandise or other per-
sonal property in any other way or manner, or for any
other purpose, use or intent, than such as shall be express-
ed in such written instrument or agreement touching the
same, the person or persons so doing, shall be deemed
guilty of felony, and on conviction thereof before a com-
petent tribunal, shall be subject to a fine not exceeding
two thousand dollars, or imprisonment in the State prison
for a term not exceeding three years, or by both such fine
and imprisonment, in the discretion of the court."

He was tried and convicted under a count of the infor-
mation reading as follows:

"For that heretofore, to wit, on the 10th day of No-
vember, A. D. 1904, at the township of Hancock, in the
county aforesaid, there was committed and intrusted to
Gilbert Ritchie, late of said township of Hancock, as
agent, the said Gilbert Ritchie being then and there the
agent of Amalie H. Hansen, by the said Amalie H. Han-
sen, the sum of $545 in money, of the value of $545, of
the goods and chattels and property of the said Amalie
H. Hansen, which said sum of $545 was so committed,
intrusted, and delivered, and put in charge of the said
Gilbert Ritchie, as agent of the said Amalie H. Hansen,
as aforesaid, and that afterwards, on, to wit, on the 10th
day of November, A. D. 1904, at the said township of
Hancock, the said Gilbert Ritchie did enter into a written
agreement signed by him the said Gilbert Ritchie, which
said written agreement did express the appropriation,
purpose, and use to which said sum of money should be
applied, and the manner of the application and employ-
ment of such money, which said written agreement was
in words and figures as follows, to wit:

" '$545.                    HANCOCK, MICH., Nov. 10, 1904.

" 'Received of A. H. Hansen five hundred forty-five & no 100 dol-
lars for 10 Moh.

" 'No. 270.                              J. A. FULLER CO.,

                                            " 'per R.'

"Meaning by the words in said written agreement 'for 10 Moh.' 10 shares of the capital stock of the Mohawk Mining Co., a corporation organized and existing under the laws of the State of Michigan, and the letter 'R' in said written agreement being the signature of the said Gilbert Ritchie, and meaning the said Gilbert Ritchie. And the said Gilbert Ritchie the said sum of $545, of the money and property of the said Amalie H. Hansen, so delivered, committed and intrusted to the said Gilbert Ritchie, as her agent as aforesaid, purposely and intentionally did fraudulently and feloniously apply and appropriate and use in another manner, and for another purpose, use and intent than such as was expressed in said written agreement contrary," etc.

*Burritt & Burritt*, for appellant.

*Angus W. Kerr*, Prosecuting Attorney (*Allen F. Rees*, of counsel), for the people.

GRANT, J. (*after stating the facts*). The facts are not in dispute. One J. A. Fuller carried on a brokerage business at Hancock and other places, under the name of J. A. Fuller & Co. Respondent was a clerk and bookkeeper, employed by Fuller at $30 per week. Fuller employed two other persons in the office, named Roberts and Penberthy. Mr. Fuller was in his office most of the time. Miss Hansen had purchased stock through Fuller & Co. twice before. She had no acquaintance with Mr. Ritchie otherwise than on these two occasions and the one in question. Mr. Ritchie had authority to receive orders for his principal for the purchase of stock. Orders as they were received were turned over to Mr. Roberts through whose hands "all purchases or sales of stock had to go." Ritchie had no other connection with Fuller & Co. otherwise than as clerk. Miss Hansen asked for Mr. Ritchie when ordering the stock in question, because she had done business with him before. She knew that Fuller & Co. carried on a brokerage business. She went to the office of J. A. Fuller & Co. She gave a verbal order through Mr.

Ritchie for 10 shares of the stock of the Mohawk Mining Company. Receiving notice from Fuller & Co. the following day that the stock had been purchased, she went to the office again, saw Mr. Ritchie, paid him the money, and took the receipt above set forth, which, as to the parties thereto, constituted a sufficient agreement under the statute. · The money was deposited in the bank, in the due course of business, to the credit of J. A. Fuller & Co. Ritchie made no profit out of the transaction. The stock was not bought, and all the money in the bank was checked out in the name of J. A. Fuller & Co. Fuller failed. Fuller signed all the checks that were drawn upon the bank in the name of J. A. Fuller & Co. He left blank checks in the office to be filled out by Ritchie and others, as occasion might require. Ritchie made no representations to Miss Hansen that he was acting independently of his employer. Nothing was said or done by either party from which it can be inferred that Miss Hansen understood that she was dealing with Ritchie as her agent rather than with J. A. Fuller & Co. through Mr. Ritchie as Fuller's agent.

The court instructed the jury that if Gilbert Ritchie was the agent of Miss Hansen, and received the money as her agent, and gave a receipt to her expressing the purpose for which the money should be applied as her agent, and intentionally appropriated the money to some other purpose, then respondent was guilty. To sustain a conviction under the statute it was essential for the prosecution to prove an agreement made between Miss Hansen and the respondent in his individual capacity. An agent making an agreement in the name of an actual bona fide principal and duly authorized to make such a contract, is not within the statute. The record is barren of any proof showing that Miss Hansen understood that she was dealing with the respondent as a principal. The contract on its face showed that she was dealing with J. A. Fuller & Co., brokers. There is no proof that she believed, or even had a right to believe, that she was dealing with respond-

ent in his individual capacity. The court should have directed a verdict of acquittal. It is unnecessary to 'discuss the other questions raised.

Conviction reversed, and new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.